IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FELICIA FIKES,          )
                        )
      Plaintiff,        )
                        )
                        )      CIVIL ACTION NO.
v.                      )      03-AR-0056-S
                        )
                        )
HEALTHSOUTH CORPORATION,)
                        )
      Defendant.        )

ENTERED
AUG 1 7 2004

### MEMORANDUM OPINION

Before the court is the motion of defendant, HealthSouth Corporation ("HealthSouth"), for summary judgment. Plaintiff, Felicia Fikes ("Fikes"), a black female, makes four claims against HealthSouth, her former employer: (1) disparate pay in violation of 42 U.S.C. § 1981; (2) disparate pay in violation of the Equal Pay Act, 29 U.S.C. § 206; (3) disparate treatment in violation of 42 U.S.C. § 1981; and (4) retaliation in violation of 42 U.S.C. § 1981.[1]

### Summary Judgment Facts

Fikes began working for HealthSouth on August 29, 2000. She was hired as a "pod tech" at a starting wage of $8.50 an hour. Fikes worked at HealthSouth's facility located on 11th Avenue South in Birmingham, Alabama. The facility contains three separate

---

[1] Fikes asserted a number of theories under these claims in her complaint, but she abandoned all but a few in responding to the motion for summary judgment. The court will only address theories that Fikes has not abandoned.

1

medical entities: (1) the HealthSouth Sports Medicine Rehabilitation Center ("Rehab Center"); (2) the Alabama Sports Medicine Orthopedic Center ("ASMOC"); and (3) the HealthSouth Medical Center ("the Medical Center"). ASMOC is managed by HealthSouth, but it is not a HealthSouth entity like the other two entities at the 11th Avenue South location. Fikes was employed only at the Rehab Center. The Rehab Center has two basic sets of customers: (1) patients, and (2) doctors who refer patients to the Rehab Center for therapy (e.g., the doctors at ASMOC). As a pod tech, Fikes' primary responsibility was to act as a liaison between the doctors at ASMOC and the HealthSouth therapists who provided therapy for the ASMOC doctors' patients. In carrying out this function, pod techs were assigned to work with ASMOC doctors at the doctors' "pods." Pods are a group of rooms where the ASMOC doctors see patients. In addition to acting as a liaison between the doctors and the HealthSouth therapists, pod techs were also assigned to work in the cardiovascular room ("CV room") at the Rehab Center. While working in the CV room, pod techs were to assist patients in using the exercise equipment.

Bill Martin ("Martin") was Fikes' direct supervisor. Martin reported to Mark Wilson ("Wilson"), who in turn reported to Steven Brobst ("Brobst"), the highest-ranking management employee at the Rehab Center during Fikes' employment with HealthSouth. Brobst then reported to Sean Huffman ("Huffman"), a management employee at

the HealthSouth corporate offices.

Fikes received a performance evaluation from HealthSouth in September 2001.  She was given a Level 3 appraisal, which indicates that she consistently met all expectations of her position.  Based on the evaluation, HealthSouth gave Fikes a 3.5% pay increase raising her wage to $8.797 an hour starting in October 2001.  In November, shortly after her raise, Fikes met with Huffman at HealthSouth's corporate offices.  At her meeting with Huffman, Fikes: (1) complained about the amount of her merit raise; (2) complained about the fact that she was performing duties beyond the scope of her job as a pod tech; and (3) complained about the fact that she was paid less than Matt Ludlum ("Ludlum"), a pod tech who did not have a college degree like Fikes does.  Huffman inquired as to why Fikes was performing duties that were not in her job description, and told her that there was nothing he could do about her pay.

On November 29, 2001, Wilson asked Fikes to assist in Dr. Nichols' ("Nichols") pod.  Nichols, an ASMOC doctor, became upset with Fikes' performance while on the job that day, and called Wilson to complain.  Wilson then came to Nichols' pod to assess the situation, and to talk to Fikes about what had happened.  On December 6, 2001, Nichols had his staff report Fikes' job performance to Rob Crabtree, an administrator at ASMOC, who then passed the report on to Brobst.  The report stated that, while

3

working for Nichols, Fikes acted in a demeaning manner towards Nichols' staff, yelled uncontrollably during a disagreement, and generally acted unprofessional. Based on the report, Brobst placed Fikes on probation starting January 23, 2002. The HealthSouth employee handbook states that once an employee is on probation unsatisfactory progress will "normally result in dismissal." Doc. 22 ex. C. On January 25, 2002, shortly after being placed on probation, Fikes was assigned to the CV room. Martin, Fikes' immediate supervisor, allegedly observed patients not being attended to while Fikes was on duty in the CV room. Martin wrote a memo to Brobst detailing Fikes' failure to perform her job. After consultation with Brobst's supervisor and the HealthSouth human resources department, Brobst decided to terminate Fikes on January 31, 2002.

## Analysis

### Section 1981 Disparate Pay Claim

In order to make out a *prima facie* case of disparate pay under § 1981, plaintiff must demonstrate (1) that she is a member of a protected class, and (2) that her job was similar to one or more higher paying jobs occupied by white individuals. *Miranda v. B & B Cash Grocery Store*, 975 F.2d 1518, 1529 (11th Cir. 1992). The first element is not disputed. With regard to the second element, Fikes argues that her job was similar to Travis Bayles' ("Bayles") job, another pod tech at HealthSouth, and that Bayles was hired at

4

a starting wage that was higher than Fikes' starting wage.[2]   In her deposition, Fikes testified that she saw Bayles' paycheck, and that his paycheck indicated that he earned approximately $8.70 an hour. Fikes Dep. at 146, 222.   HealthSouth says that Bayles started at the same wage as Fikes, and that Fikes saw Bayles' paycheck after he received a raise.   The following exchange took place during Fikes' deposition:

> Q: Is it possible that what you saw was after the raises went into effect?
>
> A: See, I don't remember actually when the actual date was that I saw that.  I just know it was 2001, somewhere between September, October, around that.  I'm not sure what exact date.
>
> Q: So it's possible that what you saw was his paycheck with his new raise in it?
>
> A: I don't know, because I didn't look at dates and all that stuff.  I don't know.
>
> . . .
>
> Q: You're saying that you 're not sure when it was.  It was sometime in September, October, and possibly November, I assume, of 2001.
>
> A: Yes.
>
> Q: If it was in October or November, then it could have been his paycheck with the new pay rate on it.  You just don't know whether that was the case or not?
>
> A: I didn't look at the date or anything.

---

[2] Fikes abandoned any complaint about the amount of her merit raise in her response to the motion for summary judgment.  She also stated in her deposition that she had no complaints based on race with regard to her merit raise.  *See* Fikes Dep. at 257.

Fikes Dep. at 226-28.   Later in her deposition, Fikes gave the
following responses to a similar line of questions:

> Q: As far as Mr. Bayles is concerned, your claim that he
> was making more than you for doing the same work is
> because of this paycheck you saw; correct?
>
> A: That's correct.
>
> Q: But you're not sure whether that was a paycheck in
> September or October or November of 2001; correct?
>
> A: That's correct.
>
> Q: So you don't know whether it was a paycheck at his
> rate prior to the October merit increase or after the
> October merit increase?
>
> A: That's correct.   I didn't look at the date.

Fikes Dep. at 260.   In contrast to Fikes' testimony that she does
not know whether Bayles was paid a higher starting wage than her,
Brobst unequivocally stated in his affidavit submitted to the court
that Bayles and Fikes were paid the same starting salary, and that
Bayles received a 5% merit raise in October 2001.[3]   Brobst Decl. ¶
19-20.   Along with his affidavit, Brobst submitted HealthSouth's
internal documentation verifying Bayles' starting wage and merit
raise.[4]   Fikes has failed to demonstrate a fact issue on her § 1981

---

[3] Bayles received a higher merit raise than Fikes due to a
better evaluation prior to the October 2001 raises.   Again, Fikes
does not complain about the amount of her merit raise.   Fikes
Dep. at 257.

[4] In her response to the motion for summary judgment, Fikes
says that, while she and Bayles performed the same basic tasks as
pod techs, she also performed additional tasks that were not
assigned to Bayles.   Fikes provides no citation for this
assertion.   In fact, in her deposition, Fikes testified that she

disparate pay claim, because Bayles was paid the same starting wage as she was.

### Equal Pay Act Claim

In order to establish a *prima facie* case under the Equal Pay Act, plaintiff must demonstrate that defendant "pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Miranda*, 975 F.2d at 1532 (citations and quotations omitted). The Equal Pay Act excludes pay differences due to merit raises. 29 U.S.C. § 206(d)(1). Fikes, again, points to Bayles. As discussed previously, Fikes has not created a fact issue that Bayles made a higher starting wage than her. Bayles did earn a higher wage after a merit raise in October 2001, but Bayles' raise was larger than Fikes' because he earned a higher rating on his performance evaluation. Such differences in pay are specifically excluded from the coverage of the Equal Pay Act. *See id.*

### Section 1981 Disparate Treatment Claim

In order to make out a *prima facie* case of discriminatory treatment, Fikes must demonstrate: (1) she belongs to a racial minority, (2) she was subjected to an adverse job action, (3) her employer treated similarly situated white employees more favorably,

---

did not have any knowledge of Bayles' specific work activities. Fikes Dep. at 263-65.

and (4) she was qualified to do the job.  *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997).  If plaintiff succeeds in establishing a *prima facie* case, the employer must then produce a legitimate, nondiscriminatory reason for its action.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Tex. Dep't of Community Aff. v. Burdine,* 450 U.S. 248, 254 (1981).  If the employer meets this burden, the employee must offer proof that the employer's articulated reason is pretextual.  *See McDonnell Douglas,* 411 U.S. at 804; *Burdine,* 450 U.S. at 256.

HealthSouth argues that Fikes has not demonstrated that similarly situated white employees were treated more favorably than her.  In order to meet her burden, Fikes must point to employees who are similar in "all relevant respects.  In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  *Holifield,* 115 F.3d at 1562 (citations omitted).  If misconduct is an articulated reason for the adverse employment decision, as it is here, the quantity and quality of the similarly situated employees' misconduct must be "nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999)(citations omitted); *Williams v. Motorola, Inc.,* 303 F.3d 1284, 1293 (11th Cir. 2002);

*Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001); *but see Alexander v. Fulton County*, 207 F.3d 1303, 1334 (11th Cir. 2000) (holding that the law does not require nearly identical misconduct); *Anderson v. WBMG-42*, 253 F.3d 561, 565 (11th Cir. 2001) (same). If Fikes fails to identify similarly situated white employees who were treated more favorably, "her case must fail because the burden is on her to establish her prima facie case." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)(citing *McDonnell Douglas*, 411 U.S. at 802; *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989)).

Fikes points to Jake Thomas ("Thomas") as a similarly situated white employee who was treated more favorably than she. Fikes says that, while on probation, Thomas engaged in conduct that was more egregious than hers, and that he was not terminated for his conduct. Fikes says that Thomas engaged in "horseplay" with another employee and broke that employee's ankle. Fikes Dep. at 381-82. HealthSouth counters that Thomas is not a similarly situated employee because: (1) Thomas was never placed on probation; (2) Thomas was employed as a exercise physiologist, not a pod tech; and (3) "horseplay" is not nearly identical to failing to perform job duties. Fikes has not created a fact issue as to whether Thomas and she were similar in all relevant respects. Even if Thomas was on probation and was a pod tech, "horseplay" with a co-worker is not sufficiently similar in "all relevant respects" or

"nearly identical" to failing to attend to patient-customers.  In the eyes of a for-profit business, failing to attend to paying customers is more egregious conduct than "horseplay" with a *co-worker*.  As stated above, the Eleventh Circuit requires that misconduct of a comparator be nearly identical to the plaintiff's alleged misconduts, so that courts are not in a position to second-guess employers' reasonable decisions.  Fikes has failed to point out such a comparator.

Even if the court were to conclude that Fikes can establish a *prima facie* case, HealthSouth has articulated a legitimate reason for Fikes' dismissal: poor job performance while on probation.  In order to rebut HealthSouth's articulated legitimate reason, Fikes must come forward with significant probative evidence, "including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997).  If Fikes has failed to come forward with such evidence, HealthSouth is entitled to summary judgment.  *Chapman v. AI Transport,* 229 F.3d 1012, 1024-25 (11th Cir. 2000).  In order to demonstrate pretext, Fikes makes three arguments: (1) there is some evidence that plaintiff was not guilty of the offense she was accused of; (2) HealthSouth did not follow its own disciplinary policies in terminating Fikes; and (3) Thomas

was similarly situated and was not fired.[5]   As to the first argument, it is an unsupported assertion with no citation to the record. *See* Pltff. Resp. to Mot. Summ. J. at 16-17.  Even if Fikes could support her assertion, HealthSouth only needs to demonstrate that Brobst honestly *believed* that Fikes was guilty of misconduct, not that she actually was. *Elrod v. Sears, Roebuck, and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).  Fikes has presented no evidence to suggest that Brobst did not believe Fikes was guilty of misconduct.  Fikes' second argument, that HealthSouth did not follow its own policies in firing Fikes, is also an unsupported assertion.   *See* Pltff. Resp. to Mot. Summ. J. at 17.   The HealthSouth Employee Handbook provides guidelines for disciplinary procedures, but HealthSouth retains discretion in applying those guidelines to particular disciplinary situations.  This court's review of the HealthSouth disciplinary procedures reveals no guidelines that were not followed.  Finally, Fikes relies on the evidence related to Thomas.  The court has already discussed the problems with this evidence.  However, even if the evidence were sufficient make out a *prima facie* case, it is insufficient, standing alone, to discredit HealthSouth's reason for terminating Fikes.  HealthSouth has submitted a report from ASMOC regarding

---

[5] Fikes actually did not make any pretext arguments with regard to her disparate treatment claim.  She made the three arguments listed above with regard to her retaliation claim. However, the arguments also apply to the disparate treatment claim pretext analysis, so the court will address them here.

Fikes' alleged misconduct, a report from Martin regarding Fikes' alleged failure to attend to patients, and testimony from Brobst that he placed Fikes on probation and terminated her based on these reports.  Other than Fikes' deposition testimony regarding Thomas, she has presented no evidence discrediting HealthSouth's explanation of why she was terminated.  No reasonable jury could disbelieve HealthSouth's explanation based on such evidence.

### Section 1981 Retaliation Claim

To establish a *prima facie* case of retaliation an employee must demonstrate (1) that she engaged in a statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that there is a causal connection between the two.  *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600-01 (11th Cir. 1986). HealthSouth says that Fikes failed to demonstrate the first and third elements of her *prima facie* case.  With regard to the first element, Fikes says that she engaged in a statutorily protected activity when she complained to Huffman in November 2001.  As mentioned previously, in her meeting with Huffman, Fikes: (1) complained about the amount of her merit raise; (2) complained about the fact that she was performing duties beyond the scope of her job as a pod tech; and (3) complained about the fact that she was paid less than Ludlum, a pod tech who did not have a college degree like Fikes does.  Fikes Dep. at 293-95.  Plaintiff admits

that there was no mention of race at this meeting.  Fikes Dep. at 296-97; Pltff. Resp. to Mot. Summ. J. at 13.  In Fikes' deposition, the following exchange took place regarding her meeting with Huffman:

> Q: Was anything said in the meeting of either a racial or sexual nature of any kind?
>
> A: No, sir.
>
> Q: By you or him?
>
> A: No, sir.

Fikes Dep. at 296-97.  In addition to Fikes' admission that race was not mentioned during the meeting, the court sees no circumstances surrounding the meeting that would alert Huffman that Fikes was complaining of something that was prohibited under § 1981.  These are the kinds of complaints employees make without regard to the civil rights laws.  If the court were to accept Fikes' position, HealthSouth points out that "any and every complaint made by a member of a protected class, regardless of whether it was related to alleged race or other discrimination, would become 'protected activity.'" Def. Reply Brief at 11.  Fikes has not created a fact issue on whether she engaged in a protected activity.

HealthSouth argues that even if Fikes has created a fact issue on the adverse employment activity element, she cannot demonstrate a causal connection between her meeting with Huffman and her termination.  In order to establish a causal connection between the

13

adverse employment action and the protected activity, the plaintiff must show that "the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985). The plaintiff can do this if she "provides sufficient evidence that the *decision-maker became aware* of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (emphasis supplied); *see Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000); *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163-64 (11th Cir. 1993). The decisionmaker's awareness of the protected activity can, of course, be proven through circumstantial evidence as well as by his admission. *Goldsmith*, 996 F.2d at 1163. Brobst was the decisionmaker who terminated Fikes. Brobst swears that he had no knowledge of Fikes' complaints to Huffman. Brobst Dep. at 217. In response, Fikes says she has created a fact issue on the causal connection element through circumstantial evidence of Brobst's knowledge. Fikes says that there is a fact issue, because Brobst and Huffman were friends and because Brobst reported to Huffman. Such evidence is not sufficient to create a fact issue in light of Brobst's uncontradicted testimony that he did not have knowledge of Fikes' meeting with Huffman. *See Brungart v. BellSouth Telecomm.,*

14

*Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Clover*, 176 F.3d at 1354-56.   There  are  logical  inferences,  and  there  are  illogical speculations.  This is the latter.  Fikes has failed to establish the first and third elements of her *prima facie* case.[6]

### Conclusion

By separate order, the court will grant HealthSouth's motion for summary judgment as to all counts.

DONE this ___17th___ day of August, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[6] Even if Fikes could establish a *prima facie* case, she cannot establish pretext.  In her brief in opposition to the motion for summary judgment, she relied on the three arguments the court discussed in the § 1981 disparate treatment claim section of this opinion.  The court's analysis in that section applies with equal force to the retaliation claim.